TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00538-CR







Gerald C. Zuliani, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0970158, HONORABLE FRED A. MOORE, JUDGE PRESIDING







A jury found appellant Gerald C. Zuliani guilty of involuntary manslaughter. The
district court assessed punishment at ten years' imprisonment and a fine of $10,000. In six points
of error, appellant contends the district court erred by overruling his motion to quash the
indictment and that the evidence is legally and factually insufficient. Finding these contentions
to be without merit, we affirm the judgment of conviction.




BACKGROUND


Appellant and Robbi Boutwell were married in December 1989. Boutwell had
two children by a previous marriage: Christopher Wohlers, age two, and Jennifer Wohlers, age
four. Boutwell and the children had lived with appellant for several weeks before the marriage. 

At 10:44 p.m. on January 2, 1990, emergency medical services workers responded
to a 911 call from Boutwell who requested an ambulance because her son had "passed out while
he was taking a bath" and had "slipped under the water." Boutwell reported, "We have been
trying to administer CPR, but he is not responding. He has a heartbeat and . . . he is throwing up
stuff, but I can't get him to like breathe. He is losing color and coming back and losing color and
coming back." Within eight minutes of the call, as the EMS dispatcher gave CPR instructions to
Boutwell over the telephone, EMS personnel and Austin police officers arrived at the Zuliani
home. Boutwell informed them that she had left the child alone for a minute or two and had
returned to find him submerged in water. 

Paramedics treating Christopher at the scene observed that he was not breathing
and that his hair and body were dry. One paramedic observed multiple bruises on Christopher's
body, including swelling and bruising on the scrotum and a ligature mark on the penis. 
Appellant attempted to cover Christopher's genitals with a sweatshirt, but the paramedic
instructed the parents not to "cover up the baby anymore" so they could continue to work on him.

Christopher was taken to the hospital emergency room at approximately 11:30
p.m. The treating physician, Dr. John Jaffe, observed that he was not conscious or breathing on
his own. Dr. Jaffe quickly determined that the child was not a drowning victim and that the
parents' report of an immersion injury was not consistent with the actual injuries. Based on
multiple retinal hemorrhages and the lack of neurological function, the doctor determined that
Christopher had a closed head injury and was severely brain damaged. He also observed
multiple bruises on various parts of the child's body, including his penis. A later CT scan
confirmed that Christopher had a severely injured brain, with two different areas of bleeding in
the subdural space in the brain, and a fractured skull. Dr. Jaffe concluded that Christopher had
been beaten.

At the police station, after initially telling the police that her son had become
submerged in water when she left him alone in the bathtub, Boutwell described finding appellant
in the bathroom with Christopher, who was lying unconscious on the floor. She also related
conduct by appellant that caused the injuries. Christopher was pronounced dead on the afternoon
of January 3, 1990. On January 4, an autopsy determined that death was caused by bilateral
subdural hemorrhaging with marked edema of the brain due to blunt trauma to the head. 

Appellant was first indicted and tried for intentionally and knowingly causing
serious bodily injury to a child. See Act of May 29, 1989, 71st Leg., R.S., ch. 357, § 1, 1989
Tex. Gen. Laws 1441, 1441 (Tex. Penal Code Ann. § 22.04(a)(1), since amended). He was
convicted of the lesser included offense of recklessly causing the injury, but the conviction was
reversed by this Court in 1995 and the cause was remanded for a new trial. See Zuliani v. State,
903 S.W.2d 812 (Tex. App.--Austin 1995, pet. ref'd). (1)

On January 21, 1997, appellant was re-indicted for murder on the theory that he
caused Christopher's death by preventing Boutwell from obtaining medical care for the child. 
See Act of May 28, 1973, 63rd Leg., R.S., ch. 426, art. II, sec. 1, § 19.02, 1973 Tex. Gen. Laws
1122, 1123 (Tex. Penal Code Ann. § 19.02(a)(1), since amended). A second count, alleging that
appellant recklessly caused serious bodily injury to the child, was abandoned by the State prior to
trial. The jury found appellant guilty of the lesser included offense of involuntary manslaughter. 
See Act of May 29, 1987, 70th Leg., R.S., ch. 307, § 1, 1987 Tex. Gen. Laws 1698, 1698 (Tex.
Penal Code Ann. § 19.05(a)(1), since recodified as § 19.04(a)).


DISCUSSION


I. Prosecutorial Vindictiveness

In his first point of error, appellant contends his Fourteenth Amendment due
process rights were violated when the State indicted him for murder, a first degree felony, after
his conviction for recklessly injuring a child, a third degree felony, was reversed on appeal. See
U.S. Const. amend. XIV. Appellant argues that a presumption of vindictiveness applies when a
second prosecution "presents a risk of greater punishment." Once the presumption was raised,
appellant contends, it was the State's burden to rebut the presumption by presenting reasons or
circumstances demonstrating that the decision to reindict for a greater offense was motivated by a
legitimate purpose. 

The State responds that because the original indictment accused appellant of
intentional injury to a child, a first degree felony, the second indictment did not accuse appellant
of a greater offense and therefore no presumption was raised. The State further contends that it
had a constitutionally legitimate reason for reindicting appellant and that, in any event, appellant
suffered no harm because he received the same penalty at the second trial as he received at the
first.

At the hearing on appellant's motion to quash, the prosecutor denied that the new
indictment was obtained to retaliate against appellant for his successful appeal of the first
conviction. He stated that the decision to seek the murder indictment was based on his
evaluation of the facts when he took over the case from another prosecutor. Because the offense
charged in the second indictment carried the same penalty as that charged in the original
indictment, he urged that there was no potential for vindictiveness. The trial court found no
vindictiveness and denied the motion.

In North Carolina v. Pearce, the Supreme Court addressed whether a trial judge
could increase a defendant's sentence after conviction at a retrial following a successful appeal. 
North Carolina v. Pearce, 395 U.S. 711 (1969). Two separate cases were before the Court in
Pearce. In both cases, the defendants successfully appealed their original convictions and on
retrial received greater sentences than they had originally received. The Court held that neither
the Double Jeopardy Clause nor the Equal Protection Clause barred imposition of the greater
sentences at the retrials. But it held that the Due Process Clause barred the increased sentences if
they were actually motivated by vindictive retaliation: "Due process of law, then, requires that
vindictiveness against a defendant for having successfully attacked his first conviction must play
no part in the sentence he receives after a new trial." Id. at 725. Because fear of such
vindictiveness might chill a defendant's decision to appeal, the Court went on to say that "due
process also requires that a defendant be freed of apprehension of such a retaliatory motivation
on the part of the sentencing judge." Id. 

To ensure the absence of vindictiveness and to assure defendants that they will not
be penalized for asserting their rights on appeal, the Supreme Court fashioned a rule requiring
that whenever a judge imposes a more severe sentence on a defendant after a new trial, the judge
must affirmatively state objective reasons for the increase in sentence. Id. at 726. In Pearce, the
State offered no evidence to justify the increased sentence and advanced no reason for the greater
penalty. Finding no explanation for the increased sentences in either of the two cases, the court
affirmed the judgments granting relief. Id. 

The Supreme Court extended the rationale of Pearce to a claim of prosecutorial
vindictiveness in Blackledge v. Perry, 417 U.S. 21 (1974). In that case, the defendant was
convicted of a misdemeanor by a lower state court. After the defendant claimed his right to trial
de novo in a higher court, the prosecutor obtained a superseding indictment charging the
defendant with a felony rather than a misdemeanor. As with a judge who resentences a
defendant, the Court concluded that a prosecutor's discretion to reindict a defendant is limited by
the Due Process Clause. Id. at 27-29. The Court held that a defendant's right to due process is
offended when the government responds to his invocation of the right to appeal by bringing a
more serious charge before retrial: "A person convicted of an offense is entitled to pursue his
statutory right to a trial de novo, without apprehension that the State will retaliate by substituting
a more serious charge for the original one, thus subjecting him to a significantly increased
potential period of incarceration." Id. at 28. The Court noted, however, that the Due Process
Clause is not offended by all possibilities of increased punishment, but only by those that present
a realistic likelihood of vindictiveness. Id. at 27.

Appellant does not claim that there is evidence of actual vindictiveness in this
case. Instead, he asserts that the circumstances create a presumption of vindictiveness that could
be overcome only by affirmative evidence of a nonvindictive reason for seeking the new
indictment.

A presumption of vindictiveness arises when the circumstances of the case create
a realistic likelihood of prosecutorial vindictiveness. United States v. Johnson, 171 F.3d 139,
141 (2d Cir. 1999); see also United States v. Goodwin, 457 U.S. 368, 374 (1982) (declining to
apply presumption of vindictiveness when prosecutor obtained indictment for more serious
offense after defendant invoked right to jury trial). Although a prosecutor may not use the
charging process to penalize a defendant for the exercise of his constitutional rights, courts have
resisted drawing bright lines and classifying any particular prosecutorial decision as per se
vindictive. See United States v. Krezdorn, 718 F.2d 1360, 1364-65 (5th Cir. 1983). The relevant
question is whether there is a realistic likelihood that the prosecutor acted out of a vindictive
motive rather than a legitimate one. See Goodwin, 457 U.S. at 373; Blackledge, 417 U.S. at 27. 

Reindictment does not automatically give rise to an inference of vindictiveness. 
See, e.g., Johnson, 171 F.3d at 140-41. The practice condemned in Blackledge was the
prosecutor's "upping the ante" in response to the defendant's invocation of his right to appeal by
bringing a more serious charge against him. Blackledge, 417 U.S. at 28. In the context of a
retrial, a presumption of vindictiveness may arise when, in the absence of new evidence, a
defendant is indicted for a new, more serious offense after successfully appealing his conviction. 
See Ronk v. State, 578 S.W.2d 120, 121 (Tex. Crim. App. 1979). The presumption does not arise
if the new charges are no more serious than those in the original indictment. See, e.g., Neal v.
Cain, 141 F.3d 207, 214 (5th Cir. 1998). 


Unlike the defendant in Blackledge, appellant was not indicted for a more serious
offense following his successful appeal of his first conviction. Instead, the prosecutor's
assessment of the severity of the crime was the same both before and after appellant's first
appeal. Appellant was originally indicted for intentionally and knowingly causing serious bodily
injury to a child, a first degree felony. (2) The second indictment also accused appellant of a first
degree felony, murder. Both indictments subjected appellant to the same potential period of
incarceration. Although the second indictment contained a second count, the State abandoned it
and proceeded to trial on the single murder charge.

We hold that appellant's conviction for a lesser offense at the first trial did not
create a due process ceiling for any subsequent indictment based on the same conduct. Because
the two indictments carried identical penalties and the number of charges against appellant was
not increased, no presumption of prosecutorial vindictiveness arises from the second indictment.

Even apart from the number and severity of charges, we cannot say that there is a
realistic likelihood of vindictiveness in light of the punishments assessed at the two trials. At the
first trial, the jury convicted appellant of a lesser-included third-degree felony offense and
assessed punishment at ten years' imprisonment and a $10,000 fine. On retrial, the jury also
found appellant guilty of a lesser-included third-degree felony offense and the judge sentenced
him to ten years' imprisonment and a $10,000 fine. Thus, both trials resulted in convictions for
third degree felonies and the sentences imposed were the same.

Appellant would have us presume vindictiveness from the prosecutor's delay in
seeking the second indictment and the failure to include the murder charge in the original
indictment. Appellant has cited us to no case, and we have found none, in which a court has
presumed or upheld a claim of prosecutorial vindictiveness based on delay in reindictment. 
Likewise, we decline to accept appellant's invitation to condemn the State for proceeding on a
charge it could have included in the original indictment. The original decision to prosecute
appellant for intentional injury to a child rather than murder was a question of trial strategy; it
had no punishment implications since both offenses are first degree felonies. The most plausible
explanation for the State's decision to prosecute appellant for murder at the second trial is not
retribution for appellant's successful appeal of his first conviction, but a desire to obtain a
conviction for an offense commensurate with the State's view of the seriousness of appellant's
conduct. See Neal, 141 F.3d at 214.

In the absence of a presumption of prosecutorial vindictiveness, then, the burden
was on appellant to come forward with proof of retaliatory motive or other circumstances
indicating vindictiveness. Wasman v. United States, 468 U.S. 559 (1984). This he failed to do. 

In sum, we find no evidence of a vindictive motive on the part of the State and no
circumstances that indicate a reasonable likelihood of vindictiveness in this case. Because no
direct evidence of actual vindictiveness was presented by appellant, the number and severity of
charges were not increased, and the sentence was not greater than that imposed in the first trial,
we overrule appellant's first point of error.


II. Sufficiency of the Evidence

The indictment alleged that appellant intentionally and knowingly caused
Christopher Wohlers' death by preventing Boutwell from obtaining medical care for him. At
appellant's request, the court's charge gave the jury the options of finding that appellant acted
recklessly or with criminal negligence. The jury found that appellant recklessly prevented
Boutwell from obtaining medical care, and thus convicted him of involuntary manslaughter. 

In his remaining points of error, appellant contests the sufficiency of the evidence
to sustain the jury's verdict. He contends the evidence is legally and factually insufficient to
prove (1) that he prevented Boutwell from obtaining medical care for Christopher, and (2) that by
preventing Boutwell from obtaining medical care, he caused the child's death. In his final point
of error, appellant contends the State failed to corroborate Boutwell's accomplice witness
testimony.

The State argues that because appellant asked the court to authorize his conviction
for the lesser included offense, he is estopped from challenging the sufficiency of the evidence to
sustain his conviction for that offense. A defendant who invokes the benefit of a lesser included
offense instruction at trial is estopped from complaining on appeal that the evidence is legally
insufficient with respect to a matter raised by the submission of the lesser offense. See State v.
Lee, 818 S.W.2d 778, 781 (Tex. Crim. App. 1981) (murder defendant who requested instruction
on voluntary manslaughter estopped from challenging sufficiency of evidence to prove sudden
passion arising from adequate cause), overruled on other grounds, Moore v. State, 969 S.W.2d 4,
10 (Tex. Crim. App. 1998). In Otting v. State, 8 S.W.3d 681, 686-87 (Tex. App.--Austin 1999,
pet. ref'd untimely filed), this Court wrote that a defendant tried on a capital murder indictment
but convicted for injury to a child was estopped from contesting the legal and factual sufficiency
of the evidence to sustain the conviction. Commentators have argued, however, that the estoppel
rule announced in Lee should be limited to those matters raised by submission of the lesser
included offense. 42 George E. Dix & Robert O. Dawson, Criminal Practice and Procedure
§ 31.75, at 177 (Texas Practice 1995). The issues raised by appellant also would have prevented
his conviction for the murder offense alleged in the indictment. See id. Expressing no opinion
on the estoppel issue, we will address appellant's contentions in the interest of justice.


A. Failure to Obtain Medical Care 

In his second point of error, appellant asserts that the evidence is legally
insufficient to prove beyond a reasonable doubt that he prevented Boutwell from obtaining
medical care for Christopher. He argues that because the evidence is insufficient to show that
Boutwell was under duress or imminent threat of death or serious bodily harm, he had no control
over her actions and did not prevent her from calling for medical assistance.

In determining the legal sufficiency of the evidence to support a criminal
conviction, the question is whether, after viewing all the evidence in the light most favorable to
the verdict, any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); Griffin v. State, 614
S.W.2d 155, 158-59 (Tex. Crim. App. 1981).

The State's main witness, Robbi Boutwell, testified at length about her brief
relationship with appellant. Boutwell testified that after encountering appellant at a high school
reunion, she rekindled a friendship with him in August 1989 and moved in with him several
weeks before their marriage in December. Soon after moving in, Boutwell noticed a change in
the way appellant treated her children. He took over the disciplining and toilet training of
Christopher because, he complained, Boutwell was ineffective and too lenient. 

Extensive testimony by various witnesses established that appellant was abusive
towards Christopher. On one occasion, appellant admitted to Boutwell that he caused bruises on
the child. On another occasion, in November, Boutwell left Christopher with appellant when she
went on a brief trip to the grocery store. When she returned, appellant was holding the
unconscious child in his arms. Boutwell observed that Christopher's breathing was shallow and
his hands had turned inward. Appellant explained that Christopher had fallen off the toilet. On
December 22, at the urging of Boutwell's parents, Christopher was admitted to the hospital
because he was lethargic and shaking.

On December 31, 1989, appellant, Boutwell and the two children went on an
overnight camping trip. The next day, appellant took Christopher deer hunting by himself. 
When they returned to the campsite, appellant was carrying Christopher in his arms. Christopher
appeared to be unconscious. Appellant told inconsistent stories about what had transpired. 
Although Christopher regained consciousness, Boutwell noticed that one of his eyes did not track
with the other eye. 

On the morning of January 2, 1990, after dropping appellant off at work, Boutwell
performed chores that had been assigned to her by appellant. Later in the day, Boutwell and
appellant quarreled about the time she took to perform the allotted tasks. That evening, after
disciplining Christopher for not eating correctly, appellant instructed him to watch television so
that he could exercise his "lazy" eye. As Christopher's attention strayed from the television,
appellant told Jennifer to hit her brother on the hand with a spoon. As he became more angry
with Christopher, he told Jennifer to push him into the wall. When she did not push Christopher
hard enough to satisfy him, appellant began to push Christopher into the wall until he fell down. 
At approximately 9:30 p.m., appellant took Christopher into the bathroom, telling Boutwell,
"Kids learn from pain." As Boutwell huddled with her daughter on the couch, she heard sounds
of water running and "thuds" coming from within the bathroom. 

Several minutes later, appellant opened the door and called for Boutwell. When
she arrived at the bathroom, Boutwell saw that both appellant and Christopher were naked. 
Christopher was lying unconscious on the floor. As both appellant and Boutwell tried to revive
him, Boutwell told appellant that they should call for an ambulance. He refused, telling her that
he was "not going down for murder." Boutwell then suggested that they call appellant's mother
for help. Appellant agreed to this, but only appellant's father was home when Boutwell called. 
Appellant had a brief telephone conversation with his father. Shortly thereafter, appellant's
parents arrived at the scene. Boutwell's testimony reflects that, in the meantime, she pleaded
with appellant three more times before he allowed her to call for an ambulance. 

Appellant seeks to discredit Boutwell's testimony by arguing that Boutwell
merely "requested permission" to call for an ambulance and that the evidence is insufficient to
show that he actually prevented her from taking action. Dr. Toby Myers, an expert witness in the
field of domestic violence, testified that appellant's relationship with Boutwell was abusive and
that he had established control over her. Based on her interview of Boutwell and review of
Boutwell's prior testimony, Dr. Myers testified that appellant exerted control over Boutwell
through intimidation, isolation, and verbal abuse. Dr. Myers opined that, based on appellant's
control over Boutwell, she was prevented from obtaining medical care for her child. 

Evidence of appellant's controlling behavior in the weeks preceding January 2
demonstrates that appellant had power and control over Boutwell and that she was fearful of him. 
He warned her that he would have her killed by a hit man if she tried to leave him. He also
threatened her with various consequences if she discussed his conduct with her family or friends. 
Several witnesses testified to incidents exemplifying appellant's control over Boutwell as well as
his abuse of Boutwell and Christopher. In addition to testimony of friends and family, two
neighbors in the apartment complex where they lived observed abusive behavior and overheard
family disturbances. Two police officers testified to their observations when they responded to a
family disturbance report.

Viewing the evidence in the light most favorable to the verdict, we conclude that
the jury could have found beyond a reasonable doubt that appellant exercised sufficient control
over Boutwell to have prevented Boutwell from obtaining medical care for Christopher on the
night of January 2, 1990. We overrule appellant's second point of error.

When conducting a factual sufficiency review, the evidence is not viewed in the
light most favorable to the verdict. Instead, all the evidence is considered equally, including the
existence of alternative hypotheses. Orona v. State, 836 S.W.2d 319, 321 (Tex. App.--Austin
1992, no pet.). A factual sufficiency review asks whether a neutral review of all the evidence,
both for and against the finding of guilt, demonstrates that the proof of guilt is so obviously weak
or so greatly outweighed by contrary proof as to undermine confidence in the jury's
determination. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A verdict may be set
aside for factual insufficiency only if a finding of guilt beyond a reasonable doubt is clearly
wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State,
823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed).

Because Boutwell did not seek medical assistance until appellant dragged
Christopher into the bathroom, appellant contends that Boutwell--not appellant--was reluctant
to seek medical care. In the 911 call to EMS, Boutwell asked that Christopher be taken to South
Austin Hospital instead of Brackenridge Hospital. Appellant argues that, because of a previous
visit to Brackenridge, Boutwell was afraid she would become the focus of an abuse inquiry. 
Appellant also urges that Boutwell failed to take Christopher to the doctor on previous occasions. 
On December 18, appellant stayed with Christopher while Boutwell went to work. He called her
at work and told her that Christopher had fallen off the counter and asked Boutwell if he should
take the child to the doctor. Boutwell left the decision up to appellant and she stayed at work. 
Likewise, Boutwell did not take Christopher to the hospital after the camping trip on January 1,
when the child appeared to be knocked out and unconscious. On cross-examination, Boutwell
acknowledged that there were numerous instances in which she did not take Christopher to the
doctor when he was injured. She admitted that she had not been prevented from taking him to
the doctor on those occasions. 

Boutwell was described as a discredited witness even by the State. Nevertheless,
the jury was free to accept any part of Boutwell's testimony. Because the jury is the sole judge of
the facts, we must give deference to its verdict. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997). The weight to give contradictory testimony is within the sole province of the jury,
because it turns on an evaluation of credibility and demeanor, and we are not free to reweigh the
evidence merely because we feel that a different result is more reasonable. Clewis, 922 S.W.2d
at 135. A decision is not manifestly unjust simply because the fact finder resolved conflicting
views of the evidence in the State's favor. Cain, 958 S.W.2d at 410. 

Given the testimony by various witnesses regarding appellant's control over
Boutwell's actions, the expert testimony of Dr. Myers, and Boutwell's extensive testimony, we
cannot say that the jury's conclusion that appellant prevented Boutwell from seeking medical
attention for Christopher on the night in question was manifestly unjust. Point of error three is
overruled.


B. Causation

 In his fourth and fifth points of error, appellant contends the evidence is legally
and factually insufficient to support the jury's conclusion that by preventing Boutwell from
obtaining medical care for Christopher, he caused the child's death. The State agrees that it was
required to prove causation as one of the elements of the offense. Section 6.04(a) of the Texas
Penal Code sets the standard for causation as follows:


A person is criminally responsible if the result would not have occurred
but for his conduct, operating either alone or concurrently with another cause,
unless the concurrent cause was clearly sufficient to produce the result and the
conduct of the actor clearly insufficient.



Tex. Penal Code Ann. § 6.04 (a) (West 1994). (3)

In interpreting this statute, the Court of Criminal Appeals has concluded that the
"but for" requirement is satisfied if either the defendant's conduct was "sufficient by itself to
have caused the harm, regardless of the existence of a concurrent cause" or "the defendant's
conduct and the other cause together may be sufficient to have caused the harm." Robbins v.
State, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986). The court added, "If the additional cause,
other than the defendant's conduct, is clearly sufficient, by itself, to produce the result and the
defendant's conduct, by itself, is clearly insufficient, then the defendant cannot be convicted." 
Id. 

In the district court's charge, the jury was instructed:


A person is criminally responsible if the result would not have occurred
but for his conduct, operating either alone or concurrently with another cause,
unless the concurrent cause was clearly sufficient to produce the result and the
conduct of the defendant clearly insufficient.

 

You are further instructed that you cannot find the defendant, Gerald
Christopher Zuliani, guilty unless you believe beyond a reasonable doubt that the
death of Christopher Wohlers would not have occurred but for the conduct of the
defendant; so that if you believe the physical injury, if any, received by
Christopher Wohlers on January 2, 1990, was a concurrent cause sufficient to
cause his death and the conduct, if any, of the defendant in preventing Robbi
Boutwell from obtaining medical care for the said Christopher Wohlers was
clearly insufficient, or if you have a reasonable doubt thereof, you will acquit the
defendant . . . .



Thus, the jury was called upon to answer two questions: (1) whether the concurrent cause,
Christopher's physical injury, was clearly sufficient to cause his death, and (2) whether the
appellant's conduct in preventing Boutwell from calling for medical assistance was clearly
insufficient to cause his death. Before convicting appellant of involuntary manslaughter, the jury
must have believed beyond a reasonable doubt that had it not been for appellant preventing
Boutwell from calling for medical care, Christopher would have survived. If the jury believed
that Christopher's physical injury was sufficient to cause his death and that appellant's conduct
in preventing Boutwell from calling for medical help was insufficient, the jury was instructed to
acquit appellant. Appellant does not challenge the charge delivered to the jury.

Boutwell testified that when she went into the bathroom, Christopher was still
breathing. The emergency services technicians testified generally that when a child stops
breathing time is critical. Dr. Jaffe testified that Christopher was not conscious or breathing on
his own when the child first arrived at the emergency room. He was "near brain dead" and "near
the end." Dr. Jaffe testified that the delay in treatment was significant: "[I]f he is not breathing
adequately, then unless his breathing is restored to normal, then the pure fact that he is not
breathing adequately will lead to additional injury to the brain and worsening an already bad
situation." Dr. Jaffe concluded that "more likely than not" Christopher would have survived had
medical personnel been able to get to him before he stopped breathing. He also testified that
intervention within four to fifteen minutes from the "cessation of oxygen" would "had to have
helped the situation."

Dr. Vincent DiMaio, the chief medical examiner for Bexar County, confirmed Dr.
Jaffe's medical opinion that Christopher's prognosis would have been good if Christopher was
still breathing when medical personnel arrived because he had no sign of brain stem hemorrhage
or irreversible injury. Dr. DiMaio was of the opinion that if doctors had been able to drain some
of the blood collecting in Christopher's brain before the pressure forced the brain stem down the
spinal canal, he would have had "a totally uneventful recovery." Dr. DiMaio estimated that
Christopher's injury occurred between one-half hour and three hours before his collapse and that
the amount of blood in his skull indicated that it took Christopher longer than half an hour to die:
"So if you know that the child was up and walking around and appeared relatively normal, he did
not have a subdural. Now, you know that when the child finally collapsed, the child had a big
subdural. And the question was, how soon before that could he have gotten a significant
subdural? The answer is a half-hour or an hour or two hours or three hours."

From Dr. DiMaio's and Dr. Jaffe's testimony, a jury could have reasonably
concluded that the time after Boutwell found Christopher breathing in a shallow manner on the
bathroom floor was critical and that it was the delay in obtaining medical care that caused the
child's death. Accordingly, we conclude there is legally sufficient evidence of causation and we
overrule appellant's fourth point of error.

Appellant challenges the factual sufficiency of the causation evidence because: (1)
Boutwell did not attempt to summon medical care until she found her son on the floor in the
bathroom and (2) the doctor who conducted the autopsy expressed doubts about Christopher's
survival even with prompt medical intervention. 

Dr. Roberto Bayardo, the chief medical examiner for Travis County, testified that
the autopsy was performed by the chief medical examiner from Harris County who was covering
for Dr. Bayardo while he was on vacation. Dr. Bayardo testified that Christopher's injury was of
such a serious nature that he had reservations whether medical intervention would have saved the
boy's life. But on cross-examination, he deferred to the expertise of the treating physician on the
child's survival prognosis.

Applying the factual sufficiency standard of review, viewing the evidence
neutrally and giving due deference to the jury's verdict, we conclude that the jury's determination
on the issue of causation was not so contrary to the overwhelming weight of evidence as to be
clearly wrong and unjust. Appellant's fifth point of error is overruled.


C. Corroboration of Accomplice Witness Testimony

In his final point of error, appellant urges that the evidence is legally insufficient
because the State failed to corroborate the testimony of Robbi Boutwell, which was required
because she was an accomplice witness. See Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979). 
The State does not dispute that Boutwell was an accomplice witness, but contends that her
testimony was corroborated by other witnesses.

To test the sufficiency of the corroboration of an accomplice witness, we set aside
the accomplice's testimony and determine whether the remaining evidence tends to connect the
accused with commission of the crime. Walker v. State, 615 S.W.2d 728, 731-32 (Tex. Crim.
App. 1981). We view the corroborating evidence in the light most favorable to the verdict. Gill
v. State, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994); Utsey v. State, 921 S.W.2d 451, 453 (Tex.
App.--Texarkana 1996, pet. ref'd). The accomplice witness's testimony need not be entirely
corroborated, nor need the corroboration directly link the accused to the crime or be sufficient in
itself to establish guilt. Hernandez v. State, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997); Gill,
873 S.W.2d at 48. The corroboration is sufficient if the cumulative weight of all the independent
facts and circumstances tends to connect the defendant to the offense. Hernandez, 939 S.W.2d at
176; Reed v. State, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988).

The State cites the testimony of two witnesses as tending to connect appellant
with the commission of the offense. The first witness, Melvin Simms, was a jail counselor who
notified appellant of Christopher's death. Simms testified that he overheard a telephone
conversation between appellant and his grandmother in which appellant told her, "I'm sorry. I
didn't mean to hurt Chris. I was just disciplining him the way my dad disciplined me." 

The second witness was Christopher's sister Jennifer, who was four at the time of
these events. Recalling the night of January 2, 1990, she testified that appellant was in the
bathroom with the door closed: "And I just remember, I don't know if my little brother was in
there with him, but I'm pretty sure he was, because he wasn't anywhere else." While her
testimony was contradictory and her memory dim, it was sufficient for a rational jury to have
believed that appellant was in the bathroom with Christopher as Boutwell testified. 

While the testimony of these witnesses is not sufficient to convict appellant of
involuntary manslaughter, it is sufficient to connect him to the offense. Therefore, Boutwell's
testimony was adequately corroborated. We overrule appellant's sixth point of error. 

Having overruled appellant's six points of error, we affirm the trial court's
judgment.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: June 29, 2001

Do Not Publish

1. [1] This conviction followed appellant's second trial on the original indictment. His first trial
ended in a mistrial after it was discovered that certain items not in evidence, including appellant's
confession, had been inadvertently sent to the jury room with the exhibits properly admitted into
evidence. 
2.    That intentional injury to a child was a first degree felony at the time the instant offense
was committed distinguishes appellant's case from Ronk v. State, 578 S.W.2d 120 (Tex. Crim. App.
1979). In Ronk, the defendants were indicted for murder after they successfully appealed their
convictions for injury to a child. At the time of the offense in Ronk, intentional injury to a child was
a second degree felony. See Penal Code, 63rd Leg., R.S., ch. 399, sec. 1, § 22.04, 1973 Tex. Gen.
Laws 883, 920 (Tex. Penal Code Ann. § 22.04, since amended). The court of criminal appeals held
that it was impermissible for the State to respond to the defendants' successful appeals of the original
convictions by bringing the more serious charge against them. Ronk, 578 S.W.2d at 121.
3.    Section 6.04 was not changed by the 1994 penal code amendments.


e issue of causation was not so contrary to the overwhelming weight of evidence as to be
clearly wrong and unjust. Appellant's fifth point of error is overruled.


C. Corroboration of Accomplice Witness Testimony

In his final point of error, appellant urges that the evidence is legally insufficient
because the State failed to corroborate the testimony of Robbi Boutwell, which was required
because she was an accomplice witness. See Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979). 
The State does not dispute that Boutwell was an accomplice witness, but contends that her
testimony was corroborated by other witnesses.